■ In the Matter of the Claim of SALEEM MEHAR, Respondent, v SKYLINE CREDIT RIDE, INC., Appellant, and MUHAMMAD TAHIR et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [753 NYS2d 593] —Peters, J. Appeal from a decision of the Workers' Compensation Board, filed May 7, 2001, which ruled, inter alia, that claimant had an employment relationship with both Skyline Credit Ride, Inc. and Muhammad Tahir.

On November 12, 1992, claimant, a limousine driver for Skyline Credit Ride, Inc., a corporation providing a radio-dispatched car service, was injured after dropping off a passenger at the John F. Kennedy International Airport. When claimant applied for workers' compensation benefits, a question arose concerning the identity of his employer. Muhammad Tahir was a shareholder of Skyline who leased radio rights from Skyline and thereafter subleased those rights to claimant.[1] Tahir also provided claimant with workers' compensation insurance[2] in accordance with Skyline's rules; claimant never met Tahir until the workers' compensation hearings.

By decision dated July 27, 1998, a Workers' Compensation Law Judge, and later the Workers' Compensation Board, held that claimant was the general employee of Tahir and under the special employment of Skyline. Accordingly, the workers' compensation award was apportioned to reflect that 90% was to be paid by Skyline and 10% by Tahir. Skyline appeals and we affirm.

"The existence of an employer-employee relationship is a factual issue for the Board to resolve and its finding must be upheld if supported by substantial evidence" (*Matter of Topper v Cohen's Bakery*, 295 AD2d 872, 872 [citations omitted]; *see*

1. Tahir initially owned and maintained the car that claimant drove but had sold it to him by the time of the accident.
2. At the time of the accident, the policy had been cancelled.

*Matter of Stamoulis v Anorad Corp.*, 292 AD2d 657, 657, *lv denied* 98 NY2d 609), even if there exists evidence which could support a contrary result (*see Matter of Topper v Cohen's Bakery, supra* at 873). Where the workers' compensation claim involves a radio-dispatched car service, "the issue whether such relationship exists depends on the control exercised by the particular service over its drivers" (*Matter of Fisher v SDAM Mgt.*, 284 AD2d 845, 846, citing *Matter of Jhoda v Mauser Serv.*, 279 AD2d 853, 854); included in such determination may be the resolution of whether there exists a special employment relationship.

Special employees are those who are " 'transferred for a limited time of whatever duration to the service of another' " (*Sherman v Reynolds Metals Co.*, 295 AD2d 843, 844, quoting *Thompson v Grumman Aerospace Corp.*, 78 NY2d 553, 557). Again, as this is a factual issue relegated to the determination by the Board, it will be upheld if supported by substantial evidence (*see Matter of Shoemaker v Manpower, Inc.*, 223 AD2d 787, 787, *lv dismissed* 88 NY2d 874). Although relevant factors aiding in such determination will include whether there was a surrender of control by the general employer and assumption of control by the special employer (*see Matter of Rosato v Thunderbird Constr.*, 299 AD2d 670, 671-672), other factors will include the method of payment, ownership of equipment and the "relative nature of the work" (*Matter of Shoemaker v Manpower, Inc., supra* at 788). The key, however, will be a determination of "who controls and directs the manner, details and ultimate result of the employee's work" (*id.* at 788).

Here, the uncontroverted evidence establishes that from the point that claimant inquired about a job at Skyline, Skyline controlled all aspects and ultimate results of his work. It interviewed, arguably hired and trained him on how to use its radio and computer equipment systems as well as all other intricate aspects of its expected job performance; it made him subject to fine, discipline or discharge. Moreover, claimant was required by Skyline to punch in his Social Security number at the commencement of each work day and work certain hours. Control was further exemplified by the lengthy and detailed set of written rules that covered all aspects of his employment, including a dress code and control of pricing. For all of these reasons, we find substantial evidence to support the Board's determination that Skyline was claimant's special employer.

In so finding, we further conclude that substantial evidence exists to support the determination that Tahir was claimant's general employer. Tahir owned the radio rights that were

leased to claimant and had furnished the car used by claimant in connection with the work until claimant ultimately bought it from him. Claimant received money either from Tahir or his agent and Tahir provided the requisite workers' compensation insurance. Tahir further received a part of the money made by claimant through his work for Skyline and was paid a fee for his use of the radio rights. Given these facts, there exists a substantial basis to support the Board's determination that Tahir employed claimant but relinquished control to Skyline.

Hence, with the determination by the Board that there exists both a general and special employer, we are next left to review whether the Board's apportionment of the award was appropriate (*see Matter of Baker v Burnett's Contr. Co.*, 40 AD2d 741, 741-742). Based upon the control exercised by each, we find no basis upon which we would disturb the determination made that Skyline should be 90% liable for claimant's compensation. Accordingly, having reviewed and rejected all remaining contentions and recognizing the abandonment of any issue regarding the existence of insurance held by Tahir at the time of the accident (*see Matter of Winglovitz v Agway, Inc.*, 246 AD2d 684, 685 n), we affirm.

Cardona, P.J., Mercure, Rose and Kane, JJ., concur. Ordered that the decision is affirmed, without costs.